UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN PHILIP MONCRIEF,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>Defendants. | No. 2:12-cv-0414 MCE AC P<br><br>ORDER AND FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court is defendants' motion for summary judgment. ECF No. 109.

I.     Procedural History

On March 19, 2014, the court heard arguments on defendants' motion to dismiss the second amended complaint and conducted a case management conference. ECF No. 40. During the case management conference, the parties were instructed to "meet and confer, develop a discovery plan, propose a schedule for the litigation, and begin discovery expeditiously and with a focus on the actions and identities of the putative Doe defendants." ECF No. 42 at 4.

After the motion to dismiss was resolved, a scheduling order was issued. ECF No. 46. The deadline for filing a motion to amend the complaint and proposed amended complaint was

set for June 20, 2014, with non-expert fact discovery concluding on January 14, 2015. Id. Expert discovery was to conclude by March 25, 2015, and dispositive motions filed by April 29, 2015. Id. Plaintiff requested and received several extensions of time to file a third amended complaint which substituted named defendants for Doe defendants and the third amended complaint was ultimately filed on January 15, 2015. ECF No. 55. The third amended complaint asserted five claims for relief against defendants Grounds, Gorham, Frias, and California Department of Corrections and Rehabilitation (CDCR). Id. Defendants proceeded to file an answer and a motion to dismiss the amended complaint in part for failure to state a claim. ECF Nos. 62, 63.

The motion to dismiss sought to dismiss defendant CDCR and Count V, which asserted claims for intentional infliction of emotional distress. ECF No. 62. Plaintiff conceded that there was no legitimate basis for opposing dismissal of defendant CDCR (ECF No. 67 at 2, ¶ 6) and the CDCR was dismissed entirely (ECF No. 71 at 8; ECF No. 72). Count V was dismissed as to defendants Grounds and Frias, but was allowed to proceed against defendant Gorham. Id. Because the parties had already had an opportunity to conduct discovery, once the motion to dismiss was resolved, the deadline for filing motions for summary judgment was re-set (ECF No. 73) and defendants filed a motion for summary judgment (ECF No. 81).

Prior to filing an opposition to the motion, plaintiff's counsel at the time moved to withdraw. ECF No. 93. The motion to withdraw was ultimately granted and defendants' summary-judgment motion was vacated in order to give plaintiff an opportunity to find replacement counsel. ECF No. 100. After plaintiff was unable to secure other counsel within the time given, defendants were given an opportunity to renew their motion for summary judgment (ECF No. 107), which is now pending before the court (ECF No. 109).

II.     Overview Of Plaintiff's Claims

Plaintiff alleges that at the times relevant to the complaint he suffered from medical issues which put him at increased risk for falling and injuring himself. ECF No. 55 at 4, ¶ 16. He also had housing restrictions which "included being housed on the ground floor, having a bottom bunk, and not being required to ascend or descend stairs." Id. at 5, ¶ 28.

On November 18, 2010, as part of a transfer to another prison, plaintiff had a layover stop

at the Correctional Training Facility (CTF) where defendants were employed. Id., ¶ 29. At that time, defendant Gorham was responsible for making the housing assignments for layover inmates and processed plaintiff's housing placement. Id., ¶ 34. Gorham allegedly knew about plaintiff's housing restrictions, including that he not be placed on an upper tier, but still assigned him to the third floor. Id., ¶ 35. Plaintiff was later awoken by defendant Frias at approximately 2:00 a.m. and ordered to go downstairs. Id., ¶ 37. Frias ignored the fact that plaintiff had restrictions on using stairs and was under the influence of medications which increased his risk of falling, and failed to assist him down the stairs. Id. As a result, plaintiff fell when he was halfway between the third and second floors and was knocked unconscious. Id.

Based on this series of events, plaintiff asserts five claims for relief against defendants. In Count I, he claims that defendant Grounds violated his Eighth Amendment rights by failing to properly train his subordinates, which led to him falling down the stairs when he was improperly housed on an upper tier. Id. at 9-10. Count II asserts that defendants Gorham, Frias, and Grounds were deliberately indifferent to plaintiff's serious medical need. Id. at 10-11. Plaintiff claims that Gorham and Frias were both aware of his medical condition and that it required he be housed on a lower tier. Id. Frias further violated his rights when he ignored plaintiff's need for assistance when descending the stairs. Id. Grounds was deliberately indifferent when he failed to properly train and supervise his subordinates. Id. Count III alleges that defendants Gorham, Frias, and Grounds were negligent when they failed to properly accommodate plaintiff's disability, did not follow proper protocols when transferring and housing him, failed to escort him down the stairs, and failed to properly respond to his injuries. Id. at 11-12. In Count IV, plaintiff alleges that Grounds negligently supervised his subordinates when he failed to provide proper training and oversight. Id. at 12. Finally, in Count V plaintiff asserts a claim of intentional infliction of emotional distress against Gorham based on Gorham's decision to house him on an upper tier. Id. at 12-13.

III. Motion for Summary Judgment

    A. Defendants' Arguments

Defendants argue that they did not violate plaintiff's Eighth Amendment rights because he

3

did not have a serious medical condition and they were not deliberately indifferent. ECF No. 109-2 at 11-17. They further argue that plaintiff has presented insufficient facts to support his claims for supervisory liability against defendant Grounds (id. at 17-18), and that all defendants are entitled to qualified immunity (id. at 18-20). With respect to plaintiff's state law claims, defendants argue that the court should decline supplemental jurisdiction. Id. at 21. They also argue that they were not negligent and are immune from liability because they did not proximately cause plaintiff's injury. Id. at 22-25. Finally, they argue that Grounds did not engage in negligent supervision (id. at 25-26), and that Gorham's conduct was not extreme and outrageous so as to support a claim for intentional infliction of emotional distress (id. at 26-27).

### B. Plaintiff's Response

At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Plaintiff has also failed to file a separate document disputing defendants' statement of undisputed facts, as required by Local Rule 260(b).

However, it is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc). However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. at 1364 n.4 (citation omitted).

The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by

*pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

IV. Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On February 13, 2017, defendants served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 109-1; see <u>Klingele v. Eikenberry</u>, 849 F.2d 409, 411 (9th Cir. 1988); <u>Rand v. Rowland</u>, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

V. <u>Undisputed Material Facts</u>

As noted above, plaintiff has failed to file a separate document disputing defendants' statement of undisputed facts, as required by Local Rule 260(b). The court further notes that plaintiff's complaint is not verified (ECF No. 55) and his opposition to the motion for summary judgment is neither signed under penalty of perjury nor accompanied by a sworn declaration or affidavit (ECF No. 143). Therefore, in determining whether a fact is in dispute, the court will consider contrary facts set forth in the complaint and opposition only to the extent that they are consistent with plaintiff's deposition transcript, contain information about which plaintiff has personal knowledge and is competent to testify, and could be presented by plaintiff in an admissible form.

At the times relevant to the complaint, plaintiff was in the custody of the CDCR and suffered from chronic obstructive pulmonary disease (COPD). Defendants' Statement of Undisputed Facts (DSUF) (ECF No. 109-3) ¶¶ 1, 7; ECF No. 55 at 2, 4, ¶¶ 7, 16. At the time of the November 2010 incident, he was being temporarily housed at CTF as a layover inmate. DSUF ¶ 14; ECF No. 55 at 5, ¶ 29. Layover inmates are inmates who are in the process of being transported from one institution to another, but do not make the trip in a single day. ECF No. 109-3 at 188-189 (Gorham Decl. ¶ 4); ECF No. 55 at 5, ¶ 29. At all times relevant to this action, defendants were employed by the CDCR at CTF. DSUF ¶¶ 3-4; ECF No. 55 at 2-3, ¶¶ 9-11. Grounds was the warden and Gorham and Frias were correctional officers. <u>Id.</u>

On September 15, 2010, plaintiff appeared before the Unit Classification Committee (UCC). The UCC determined that plaintiff required an immediate transfer because his COPD made him susceptible to Valley Fever, and referred him to the classification services representative (CSR). DSUF ¶ 8; ECF No. 109-3 at 40.

On October 1, 2010, a reclassification score sheet (CDCR 840) for plaintiff was

completed. Id. at 63. It did not show plaintiff as having any disabilities. Id. In the section for identification of disabilities, the previous and subsequent score sheets listed plaintiff as being classified as "DNH" (id. at 62-63), which means he had a hearing impairment that did not impact placement (see id. at 48 (disability placement program verification form (CDC 1845) containing descriptions of various disability codes)). No other disabilities were identified. Id. at 62-63.

On October 11, 2010, CSR Requa deferred plaintiff's relocation because he had "multiple and inconsistent CDC 7410's documenting requirements for a variety of medical supplies and providing a list of physical limitations." DSUF ¶ 9; ECF No. 109-3 at 41. The CSR found that plaintiff's conditions could potentially impact his placement and that "a current summary of the inmate's present medical needs and limitations, documented on an updated, comprehensive CDC 128-C3 and CDC 7410 [wa]s required."[1] Id. at 41.

On October 22, 2010, a medical classification chrono (CDC 128-C3) was completed for plaintiff that indicated that he had a stair restriction.[2] Id. at 59.

On October 27, 2010, the UCC saw plaintiff again and noted that on October 22, 2010, he had been "issued a new CDCR 128-C3 and the CDCR 7410 is now in the C-File." Id. at 42. The UCC further noted that he had a CDCR 1845 (disability placement program verification) that classified him as DNH. Id. The committee notes did not directly identify any lower tier restriction. Id.

On October 28, 2010, a comprehensive accommodation chrono (CDC 7410) was completed that showed that plaintiff was to be housed in a ground floor cell for one year. Id. at

---

[1] A CDC 128-C3 is a medical classification chrono and a CDC 7410 is a comprehensive accommodation chrono. See, e.g., ECF No. 109-3 at 59-60.

[2] In their statement of facts, defendants characterize the chrono as being contradictory because the box for no stairs is checked while the comments only reference a lower bunk restriction. DSUF ¶ 12. The court does not find this form to be internally contradictory, as the no stairs box has an asterisk next to it which indicates that details are to be included in the comments. ECF No. 109-3 at 59. There is no separate box for lower bunk restrictions. Accordingly, absent a declaration from a competent witness regarding the proper interpretation of this form, the court finds that a more reasonable interpretation of the form is that the restriction on stairs also included a lower bunk restriction. This interpretation is further supported by the October 28, 2010 comprehensive accommodation chrono which listed both restrictions (ECF No. 109-3 at 60).

8

60. That chrono was approved on November 4, 2010. Id.

On November 1, 2010, CSR Barkley endorsed plaintiff's transfer to California State Prison (CSP)-Solano. Id. at 43. The CSR noted a CDC 128-C (duty limitation chrono) dated September 10, 2010, and that plaintiff was DNH. Id. The only CDC 128-C provided in evidence is dated July 28, 2010, and it indicates plaintiff's work assignment should not include climbing. Id. at 54. The document closest in time to September 10, 2010, is a CDC 128-C3 (medical classification chrono) dated September 9, 2010, that indicates that plaintiff did not have any housing restrictions related to stairs. Id. at 57. The CSR did not specifically mention any lower tier restrictions. Id. at 43.

On November 15, 2010, a confidential medical/mental health information transfer-sending institution form (CDC 7371) was completed. ECF No. 143 at 5. The form indicated that plaintiff had a CDC 7410 and CDC 1845, but did not specify the dates or contents of the forms, though it noted that the forms were attached. Id. The only disability noted on the form was plaintiff's hearing impairment. Id.

On November 17, 2010, plaintiff arrived at CTF. DSUF ¶ 14.[3] On the day plaintiff arrived, defendant Gorham was responsible for processing layover inmates, a task which included reviewing their central files to determine where each inmate could be safely housed based on his security and medical needs. DSUF ¶¶ 15-16; ECF No. 55 at 6, ¶¶ 33-34. Gorham housed plaintiff in a cell on the third tier. DSUF ¶ 22; ECF No. 55 at 6, ¶ 35. Plaintiff did not tell Gorham that he had to be housed on a lower tier. DSUF ¶ 19; ECF No. 109-3 at 193 (Moncrief Depo. at 25:4-20).[4]

---

[3] Plaintiff's complaint and opposition state that he arrived on or about November 18, 2010 (ECF No. 5 at 5, ¶ 29; ECF No. 143 at 28), but he offers no evidence to support his claim. Since his records demonstrate that he arrived on November 17, 2010 (ECF No. 109-3 at 20), this fact is deemed undisputed.

[4] Although plaintiff states in both the complaint and his opposition that he told Gorham he could not be housed on an upper tier, neither of these is a sworn statement or made under penalty of perjury. ECF No. 55 at 6, ¶ 35; ECF No. 143 at 28. In the face of the contrary sworn testimony plaintiff gave at his deposition (ECF No. 109-3 at 193 (Moncrief Depo. at 25:4-20)), these statements are insufficient to create a dispute of fact and this fact is therefore deemed undisputed.

9

On November 18, 2010, at approximately 2:00 a.m., plaintiff was released from his cell by defendant Frias so that he could continue his transport to CSP-Solano. DSUF ¶ 38; ECF No. 55 at 7, ¶ 37. Frias did not have access to plaintiff's medical file and was not aware of plaintiff's accommodations or the medications he was taking. DSUF ¶ 39.[5] After releasing plaintiff from his cell, Frias watched plaintiff approach the stairs and then turned his attention to another inmate. DSUF ¶ 40; ECF No. 55 at 7, ¶ 37. Plaintiff made it approximately halfway down the stairs between the third and second tiers before falling to the second tier. DSUF ¶¶ 41-42; ECF No. 55 at 7, ¶ 37. Another officer immediately activated his alarm and medical staff responded. DSUF ¶¶ 43, 45; ECF No. 55 at 7, ¶ 39. Plaintiff was then taken to the infirmary and ultimately sent to the hospital. DSUF ¶¶ 47-48; ECF No. 55 at 7, ¶ 39.

Defendant Grounds was not present when plaintiff arrived at CTF and was not part of the intake process. DSUF ¶ 5. He was advised of the incident after the fact and it was the only incident of its kind to occur while he was warden at CTF. Id.[6]

VI. Discussion

Plaintiff spends a significant portion of his opposition addressing what happened prior to his transfer to CTF, when he went through processing after he arrived at CTF, and after he suffered his injury. ECF No. 143 at 1-4, 13-17. However, Frias, Gorham, and Grounds were not involved with what happened prior to his transfer to CTF or after he suffered his injury, and while Gorham was involved in processing plaintiff, plaintiff's arguments and allegations focus on the actions of medical staff and correctional staff who he identifies as the intake lieutenant, the watch commander, and the facility officer. ECF No. 143 at 1-4, 13-17, 24. The actions of non-defendants is irrelevant to the allegations against Gorham, Frias, and Grounds and the court will

---

[5] Plaintiff alleges that Frias knew or should have known about his impaired ability to walk (ECF No. 55 at 7, ¶ 37) and argues generally that "defendants" knew about his conditions because of all the paperwork that was completed (ECF No. 143 at 1-4, 13-32). However, plaintiff provides no evidence that defendant Frias knew about his mobility limitations, saw the records documenting his limitations or even had access to them, or had reason to inquire into plaintiff's condition. This fact is therefore deemed undisputed.

[6] Plaintiff makes no allegations that Grounds was present either during his intake or when he fell and these facts are therefore deemed undisputed.

10

therefore disregard the arguments regarding non-defendants.

### A. Defendants Gorham and Frias (Count II)

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotations marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992).

Deliberate indifference is established only where the defendant *subjectively* "'knows of and disregards an *excessive risk* to inmate health and safety.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (quoting Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). "Prison officials are deliberately indifferent to a prisoner's serious medical needs if they 'deny, delay or intentionally interfere with medical treatment.'" Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).

Plaintiff alleges that defendant Gorham was deliberately indifferent to his medical needs because Gorham housed him on the third tier even though he had an accommodation chrono that said he was to be housed on the ground floor. He argues that because policy required certain documents to be in his file, Gorham must have been aware of his ground floor accommodation. Assuming without deciding that plaintiff's lower tier accommodation constituted a serious medical need, he is unable to show that Gorham was deliberately indifferent to that need. Gorham avers that he did not find a lower tier chrono in plaintiff's file (DSUF ¶ 18) and plaintiff's speculation to the contrary is not evidence. Plaintiff has no personal knowledge of the contents of the file Gorham reviewed, and although a lower tier chrono was created prior to his

11

transfer to CTF, the evidence supports Gorham's claim that neither the chrono nor any other evidence of plaintiff's lower tier accommodation was in the file when he reviewed it.

Plaintiff's reclassification score sheet, which was completed a little over a month before he was transferred, did not show that he had any disabilities and his previous score sheet only showed a hearing impairment that did not impact his housing. ECF No. 109-3 at 63-64. Moreover, while the October 27, 2010 UCC notes referred to the October 22, 2010 medical classification chrono, which included a no stairs restriction, the notes did not specifically identify plaintiff's mobility limitations and stated that a comprehensive accommodation chrono was in his central file. Id. at 42, 59. There were numerous comprehensive accommodation chronos issued to plaintiff during 2010, some of which stated that he required a lower tier (id. at 55, 60), and more of which did not (id. at 46-47, 49-51, 53). The notes did not specify which chrono was in the file, but it does not appear possible that it was the comprehensive chrono competed on October 28, 2010, since that chrono was not completed until the day after the committee met and was not approved until a week after that. Id. at 60. Plaintiff's endorsement to CSP-Solano was also completed prior to the new comprehensive chrono being approved and made no mention of any stair restriction, though it did reference a duty limitation chrono. Id. at 43. However, that document would have addressed plaintiff's work limitations, not his housing restrictions. See, e.g., id. at 54. Finally, the transfer form completed by the institution plaintiff was being transferred from (CDC 7371) identified plaintiff's hearing impairment as his only disability. ECF No. 143 at 5. While the form did indicate that a comprehensive chrono and disability verification were attached, the forms were not identified by date and neither party has specified which forms were attached, if they were in fact attached. It also has not been established that this is a form that defendant Gorham would have reviewed and the signature boxes on the form indicate that it would have been reviewed by medical personnel. Id.

Although the evidence shows that a lower tier chrono was in place for plaintiff at the time of his transfer, it does not support an inference that this chrono or any other document reflecting the no stairs restriction was in the file reviewed by defendant Gorham. To the contrary, the evidence before the court indicates that no such document was accessible to Gorham. Especially

12

in light of plaintiff's deposition testimony that he did not tell Gorham he could not house on an upper tier (ECF No. 109-3 at 193 (Moncrief Depo. at 25:11-20)), there is no evidence that Gorham was aware of plaintiff's housing restriction.

Plaintiff's claims against defendant Frias are even more tenuous. Plaintiff makes no claim that Frias reviewed his file prior to waking him or that he advised Frias that he required assistance descending the stairs. Instead, he makes general arguments that because the documents existed and were required, "defendants," which presumably includes Frias, must have been aware of them. The evidence does not support such an inference. Plaintiff's argument is insufficient to show that Frias was objectively aware that plaintiff needed help down the stairs and ignored plaintiff's need.

Plaintiff has failed to produce evidence demonstrating defendants Gorham and Frias' subjective knowledge that he could not be safely housed on the third tier or descend stairs without assistance. Accordingly, defendants' motion for summary judgment on the Eighth Amendment claims against Gorham and Frias should be granted.

B. Defendant Grounds (Count I)

"A supervisor is liable under § 1983 for a subordinate's constitutional violations 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" Maxwell v. County of San Diego, 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)). "Thus, supervisors 'can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others.'" Edgerly v. City & County of San Francisco, 599 F.3d 946, 961 (9th Cir. 2010) (quoting Cunningham v. Gates, 229 F.3d 1271, 1292 (9th Cir. 2000)).

"It is well-established that a governmental officer may be held liable for damages for constitutional wrongs engendered by his failure to adequately supervise or train his subordinates." Ting v. United States, 927 F.2d 1504, 1512 (9th Cir. 1991) (citing Bergquist v. County of Cochise, 806 F.2d 1364, 1369-70 (9th Cir. 1986)). However, "'only where the failure to train

13

amounts to deliberate indifference to the rights of persons with whom the [subordinates] come into contact'" is there a basis for liability under § 1983. Id. (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

Plaintiff's claims against Grounds are based solely on defendant's supervisory role and alleged failure to train and supervise defendants Gorham and Frias. ECF No. 55 at 9-11. As discussed above, defendants Gorham and Frias did not violate plaintiff's rights under the Eighth Amendment. Accordingly, plaintiff's claims against Grounds must fail. However, even if the court found that defendants Gorham and Frias violated plaintiff's rights, plaintiff has not presented sufficient evidence to support a supervisory claim. Grounds was not responsible for training officers on intake or housing (DSUF ¶ 5), and while he may have had some ultimate responsibility for ensuring adequate training was provided,[7] plaintiff has offered no evidence that would support finding of insufficient training or supervision, such as a pattern of deficient conduct. He also has not disputed Grounds statement that there were no similar incidents while he was warden (DSUF ¶ 5).

For these reasons, the motion for summary judgment should be granted on the supervisory liability claim against Grounds.

####    C.    Qualified Immunity

Because the court finds no violation of plaintiff's Eighth Amendment rights, it declines to address defendants' argument that they are entitled to qualified immunity.

####    D.    State Law Claims (Counts III, IV & V)

Subject to the conditions set forth in 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over state law claims. Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) (en banc). The court's decision whether to exercise supplemental jurisdiction should be informed by "values of economy, convenience, fairness, and comity." Id. at 1001 (citations and internal quotation marks omitted). Further, primary responsibility for

---

[7] Defendant Grounds' testimony is not clear as to whether he was simply not responsible for directly training the officers on intake and housing or whether training was completely outside the scope of his oversight. ECF No. 109-3 at 67-70 (Grounds Depo. at 31:11-32:6, 34:19-35:6).

14

developing and applying state law rests with the state courts. Therefore, when federal claims are eliminated before trial, district courts should usually decline to exercise supplemental jurisdiction. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 & n.7 (1988); Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994) ("[I]n the *usual* case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." (emphasis and alteration in original) (quoting Schneider v. TRW, Inc., 938 F.2d 986, 993 (9th Cir. 1991))). As outlined above, it is recommended that defendants' motion for summary judgment be granted as to the federal-law claims. Plaintiff has not identified any reason why his case is not a usual case and the undersigned therefore recommends that the court decline to exercise supplemental jurisdiction over plaintiff's state law claims.

      E.      Conclusion

For the reasons set forth above, defendants' motion for summary judgment should be granted, judgment entered for defendants on the federal claims, and the remaining claims dismissed.

    VII.      Motion to Amend

In his opposition, plaintiff requests that he be given leave to amend the complaint to correct any deficiencies. ECF No. 143 at 4, 32, 35. Based upon plaintiff's numerous references to unnamed "defendant" nurses, doctors, and correctional staff throughout the opposition, it appears that he is also seeking to add claims against new defendants. Id. at 1-4, 13-17, 24.

With respect to plaintiff's request to amend the complaint to cure deficiencies, at this stage the issue is not whether the claims against Frias, Gorham, and Grounds have been sufficiently pled, but whether those claims involve disputes of material fact requiring resolution by a jury. In other words, plaintiff was required at this stage to provide evidence supporting his claims, not just allegations, and he has failed to do so. In recommending granting the motion for summary judgment, the undersigned has found not a deficiency of the claims, but a lack of evidence establishing a material issue of fact. Accordingly, plaintiff's request for leave to amend the current claims in the complaint is denied.

With respect to plaintiff's apparent request to amend the complaint to add additional defendants, the court finds that plaintiff has been provided more than ample opportunity to identify additional defendants and claims and amend the complaint accordingly. Furthermore, plaintiff was previously advised that Frias, Gorham, and Grounds were the only defendants in this action and that if he wanted to amend the complaint he would be required to "file a motion to amend the complaint and include a copy of his proposed amended complaint, along with an explanation of why he should be permitted to amend at this late date, especially considering that he has amended the complaint on three prior occasions and had the assistance of counsel in doing so." ECF No. 122 at 2 (citing ECF Nos. 9, 34, 55). Plaintiff has failed to comply with these instructions and has not provided any explanation that would lead the court to find that justice requires he be given leave to amend to add new defendants. Accordingly, the request for leave to amend will be denied.

VIII. Plain Language Summary of this Order for a Pro Se Litigant

The undersigned is recommending that defendants' motion for summary judgment be granted because you did not provide enough evidence to support your claims. Specifically, you did not provide any evidence that showed that defendants Gorham and Frias new about your medical needs or that Grounds was not properly training or supervising Gorham and Frias. Because defendants are entitled to summary judgment on your federal claims, the court should dismiss your state claims. Your request to amend the complaint is being denied because it is too late to add new allegations. At the summary judgment stage you needed to provide evidence, not more allegations, against defendants Gorham, Frias, and Grounds. Your request to amend to add new defendants is also denied because you have not provided a proposed amended complaint or explained why you should be allowed to add new defendants this late in the case.

Accordingly, IT IS HEREBY ORDERED that plaintiff's request for leave to amend the complaint (ECF No. 143) is denied.

IT IS FURTHER RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 109) be granted, and judgment entered for defendants on Counts I and II;

2. The court decline to exercise supplemental jurisdiction over Counts III, IV, and V, and those Counts be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: September 27, 2017

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE